# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JORGE ZAMORA,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| v. ) | **5:09-CV-8017-VEH-JEO** |
| ) | **5:06-CR-352-VEH-JEO** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

Jorge Zamora (hereinafter "Defendant") initiated the present action, seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (09-8017 at Doc. 1).[1] Upon consideration, the Court concludes the motion is due to be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with five co-defendants via indictment on August 30, 2006. (06-0352 at Doc. 6). He was charged in Count One with conspiring to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846. (*Id.*) In Count Eight of the indictment, Defendant was charged with distributing 50 grams or more of

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the Court's record in this case. The pleadings from the original criminal case are designated as "06-0352" and the pleadings on the motion to vacate are designated as "09-8017".

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (*Id*.) In Count Nine[2], he was charged with possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (*Id*.)

Defendant was arraigned in this Court on September 13, 2006. His court-appointed counsel, Charles Scott Linton, entered a plea of not guilty on his behalf. Defendant again appeared in court for the purpose of changing his plea to a blind plea on December 21, 2006. However, "[d]uring the course of the plea colloquy, it became apparent that [Defendant] did not want to admit or affirm the factual basis for the charged conduct, and [the Court] did not accept his plea." (Linton Aff. at pp. 1-2, ¶ 1).[3] He was tried before a jury beginning March 12, 2007. The jury found him guilty of all three charges against him. (06-00352 at Doc. 132).

At his sentencing hearing on July 10, 2007, the Court found that Defendant's testimony at trial was perjurous, and sentenced him to 235 months in prison with an additional 60 months of supervised release.[4] (Doc. 172). On July 13, 2007,

---

[2] The indictment contained nine counts against six defendants. Only Counts One, Eight, and Nine asserted charges against Defendant. (06-00352 at Doc. 6).

[3] The Affidavit of Charles Scott Linton is located at Exhibit 1 to the government's opposition to Defendant's motion for habeas relief. It is found at 09-8017, Doc. 6-1 in the Court's file.

[4] Under the Sentencing Guidelines, Defendant was eligible to receive a sentence of between 235 and 293 months' imprisonment for his convictions. This

Defendant appealed his sentence to the Eleventh Circuit. (Doc. 173). The only issue raised on appeal was whether this Court properly enhanced his base offense level by two levels under U.S.S.G. § 3C1.1 for obstruction of justice based on its finding of perjury. (Doc. 187). The Eleventh Circuit affirmed his sentence in an unpublished opinion dated May 8, 2008. (*Id*.) Defendant petitioned the Supreme Court for a writ of certiorari in May 2008, which was denied the same month. (09-8017 at Doc. 1, pg. 3). The mandate of the Eleventh Circuit was issued on June 6, 2008. (06-00352 at Doc. 187).

Defendant filed the present motion for habeas relief with corresponding brief pursuant to 28 U.S.C. § 2255 on May 14, 2009. (09-8017 at Doc. 1). In it, he moves this Court to vacate, set aside, or correct his sentence on grounds of ineffective assistance of counsel during his trial and on appeal. (*Id*.) On July 23, 2009, this Court entered an Order to Show Cause why Defendant should not be granted the requested relief, to which the United States responded, on September 10, 2009, via brief and affidavit of Charles Scott Linton. (Docs. 2 and 6, respectively). The Order permitted Defendant to file a reply to the response of the United States. (*Id*.)

---

calculation was based on his offense level of 38 and a category I criminal history. (*See* Judgment of USCA dated May 8, 2008 (06-00352 at doc. 187)). Thus, as explained by the Eleventh Circuit Court of Appeals, the sentences imposed by this Court "were at the low end of the Guidelines sentence range." (*Id*.)

However, Defendant filed no reply to the government's response. The Defendant's motion is now ripe for the Court's review.

## II.   ANALYSIS

Defendant asserts two grounds in his motion for habeas relief: (1) that his attorney, Charles Scott Linton (hereinafter "Linton") rendered ineffective assistance during the trial phase of his criminal case by failing to reasonably investigate and advise Defendant that he might become eligible for a lighter sentence under the Safety Valve provision of the Sentencing Guidelines, § 5C1.2, 18 U.S.C. § 3553(f); and (2) that Linton provided ineffective assistance during both the trial and appeal phases by failing to object to the quantities of methamphetamine which Defendant was charged with possessing, distributing, and conspiring to commit possess and distribute. (Doc. 1).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or ... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Thus, a convicted defendant must satisfy two requirements to prevail on an ineffective assistance of counsel claim. He must show that "(1) 'counsel's representation fell below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and that (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694, 104 S. Ct. at 2068. In this circuit, we have referred to the latter element as the 'prejudice' prong and the former element as the 'performance' prong." *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). When considering such claims, a court need not address both components because a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance.... To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled.... The petitioner must establish that

>particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.
>
>Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one.... [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*....
>
>In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added).

With regard to the second prong under *Strickland*, it is not enough to show that an error had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on an ineffective assistance claim, a defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

As previously explained, Defendant here maintains that Linton provided ineffective assistance of counsel by failing to investigate and advise him of his eligibility for the Safety Valve provision of the Sentencing Guidelines. According to Defendant, had Linton advised him of the same, he would have pled guilty to the charges against him, and sentenced to between 70 and 87 months in prison, instead of 235 months with additional time in supervised release. Defendant argues, therefore, that Linton's failure to meet the objective standard of reasonableness by failing to advise him of this provision prejudiced him by resulting in a stricter sentence.

18 U.S.C. § 3553(f), the Safety-Valve provision, states, in relevant part:

**Limitation on applicability of statutory minimums in certain cases.**

> [T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 <u>without regard to any statutory minimum sentence, if the court finds at sentencing</u>, after the Government has been afforded the opportunity to make a recommendation, that--
>
> > (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> >
> > (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

>   (3) the offense did not result in death or serious bodily injury to any person;
>
>   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
>   (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C.A. § 3553(f) (emphasis added).

Defendant argues that, when he was sentenced by the district court, he satisfied the first four of these criteria. This is not disputed by the government. Defendant maintains, however, that he would have met the fifth requirement but for Linton's advice that he plead not guilty. He claims Linton gave him this advice without considering the potential impact such a plea would have on his sentence. Finally, Defendant further argues that he was offered a plea agreement by the prosecution which took full advantage of the Safety Valve, but Linton did not inform him of the offer. Defendant claims he was unaware of the proposed plea agreement until after

his sentence was affirmed on appeal, when his trial documents were released to him.

The United States responds that this argument is plainly without merit. Accompanying its opposition brief is the affidavit of Charles Scott Linton, in which Linton testifies that he did, in fact, solicit a plea agreement from the government, which he presented to Defendant with full advice regarding its potential impact on his sentence. The plea agreement, Linton states, explained to Defendant how the Safety Valve provision could apply to him. Although Linton advised Defendant not to sign the plea agreement, Defendant did decide to change his plea from not guilty to a blind plea, "with the hope and expectation that he would be given either [ ] a 5K1.1 or 5C1.2 for his cooperation." (Linton Aff. at pg. 1, ¶ 1). However, when Defendant appeared before this Court on December 21, 2006, for the purpose of entering that plea, Linton states that Defendant was not prepared to admit the factual basis for the plea agreement and the Court declined to accept his plea. (*Id.*)

As previously stated, Defendant has not filed any reply to the government's opposition to his motion. Defendant was notified of his right to do so by the Court's Order of July 23, 2009, in which he was given twenty (20) days to file a traverse to the government's opposition to his motion for relief. (*See* Order, doc. 2). There is no indication in the record that Defendant failed to receive this Order, as no mail to Defendant has been returned and there has been no change of address by Defendant

since he filed his motion.

In challenging Linton's performance as deficient, Defendant must prove the same by a preponderance of competent evidence. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000); *Lugo v. United States*, 349 Fed. Appx. 484, 486 (11th Cir. 2009); *Bracy v. United States*, 2010 WL 749330, * 6 n. 10 (S.D. Ala. Mar. 2, 2010); *Bohannon v. United States*, 2010 WL 749329, * 1 n. 2 (S.D. Ala. Feb. 26, 2010). However, Defendant offers no evidence outside his briefs to support his claim that Linton failed to advise him of the government's Safety Valve offer or how application of the Safety Valve it could impact his sentence.

Defendant's entire argument is based on his assumption that, had Linton advised him of the Safety Valve provision, he would have pled guilty to the charge and most certainly would have been given a lighter sentence as a result. As the United States points out, however, the fact that he pled not guilty and was convicted by a jury is not the reason for his 235-month sentence. Subsection (5) of § 3553(f) makes clear that Defendant could still have satisfied the last element of the Safety Valve provision if, "not later than the time of the *sentencing hearing*," he truthfully provided to the government the information he had regarding the charges alleged in the indictment. (Emphasis added). Thus, even after he was tried and convicted, he could have taken full advantage of the Safety Valve by being truthful with the

prosecution prior to his sentencing. Linton's affidavit, which is not refuted by any evidence from Defendant, suggests that Defendant was aware that he could receive a lighter sentence under the Safety Valve at the time of his sentencing. Thus, this Court is satisfied that Defendant knew and chose to reject his opportunity to provide information to the government which could have triggered application of the Safety Valve. Defendant offers no evidence to support his argument to the contrary, and the Court finds no merit in the same.

In his second ground for habeas relief, Defendant avers that Linton should have objected – both at trial and on appeal – to the quantity of methamphetamine which he was charged with possessing, distributing, and conspiring to possess and distribute.

The facts alleged in the indictment are as follows: (1) that beginning in April 2006, Defendant and five co-defendants engaged in a conspiracy to possess and distribute a mixture of drugs containing detectable amounts of methamphetamine; and (2) that said conspiracy, possession and distribution of methamphetamine continued until August 11, 2006, when the Defendant and at least one co-defendant were arrested. (06-00352 at Doc. 6). Defendant maintains that he was not involved in the conspiracy until August 11, 2006, the same day he was arrested. Therefore, Defendant argues, he should not have been charged with possessing, distributing, or conspiring to possess or distribute, quantities of methamphetamine for any period of

time during the conspiracy except August 11, 2006. Because he was charged with participating throughout the duration of the alleged operation, beginning in April 2006, Defendant posits that Linton should have objected, and that his failure to do so constituted ineffective assistance of counsel both at trial and on appeal.

The United States responds that a plethora of evidence produced at trial shows that Defendant was less than truthful as to when he entered the conspiracy. Various co-defendants testified that Defendant engaged in the conspiracy prior to the day of his arrest.[5] In his affidavit, Linton explained that he moved this Court for acquittal

---

[5] Specifically, the trial testimony of co-defendant Mateo Gonzalez revealed that Jose DeJesus Ruvalcaba-Mora (a/k/a "Pepe"), another co-defendant, was his supplier of methamphetamine, and that Pepe lived in the same apartment as Defendant during the time relevant to the charges in the indictment. (06-00352 at doc. 180, pp. 80-81). Gonzalez further testified that he picked up methamphetamine from Pepe at that apartment. (*Id*. at 81). He described his transactions with Pepe as follows: "I was to call [Pepe] all the time and then he was to call [Defendant] and I was to get [the methamphetamine] from [Defendant] whenever Pepe wasn't around." (*Id*.; *see also id*. at 85 (same)). He also testified to meeting Pepe and Defendant at their apartment to purchase methamphetamine approximately ten times before his arrest in July 2006, and to seeing both Pepe and Defendant weighing supplies of methamphetamine during these meetings. (*Id*. at 82-83). Gonzalez stated that he transferred money to both Pepe and Defendant in return for methamphetamine. (*Id*. at 84).

Pepe also testified that he shared an apartment with Defendant after he came to Alabama in 2005. (*Id*. at 98). He stated further that Defendant was aware that he was receiving methamphetamine from California, that Defendant had given him money in the past to obtain methamphetamine, and that Defendant helped him cut the methamphetamine as he received it. (*Id*. at 100-101). Defendant shared in Pepe's supply by receiving a "fourth portion," or a quarter pound, of

based on the sufficiency of the evidence as to the amount of methamphetamine attributed to Defendant, but the motion was denied. (06-00352 at Doc. 181 pp. 177-78). On appeal, Linton testifies that "the issue of attribution was not raised because there was no credible legal or factual basis for it.... The jury's verdict and attribution amount was supported by the evidence. There was no credible basis for appeal of the issue." (Linton Aff. at pg. 2, ¶ 2).

Again, Defendant has offered no rebuttal to these points. However, the Supreme Court has extended the *Strickland* standard to apply to habeas proceedings that implicate a court's use of the Sentencing Guidelines. *Glover v. United States*, 531 U.S. 198, 203, 121 S. Ct. 696, 700, 148 L. Ed. 2d 604 (2001). *See also Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 1512, 146 L. Ed. 2d 389 (2000) (acknowledging that *Strickland* applies where "there existed 'a reasonable probability that the result of the sentencing phase would have been different' if the jury had heard" exculpatory evidence). Nevertheless, this Court finds in the record no

---

methamphetamine. (*Id*. at 102). Pepe corroborated Gonzalez's testimony that Defendant stood in for him by selling methamphetamine to Gonzalez, or communicating with Gonzalez regarding a drug transaction, on at least one occasion when Pepe was unavailable. (*Id*. at 103-104). Pepe lived in the same apartment with Defendant until June of 2006, two months prior to their arrest on August 11, 2006. (Doc. 181 at 117). Another co-defendant, Jessica Leipert, testified that she witnessed Gonzalez receiving methamphetamine from both Pepe and Defendant on more than one occasion. (*Id*. at 135-37).

indication that Linton's performance was deficient in any manner, much less below the objective standard of reasonableness required to satisfy the first prong of *Strickland*. There is also no reason to conclude, based on the record before the Court, that there exists a "reasonable probability" that Defendant's sentence would have been different had Linton performed any differently at trial or on appeal. Given the strong presumption of reasonableness with which this Court must consider Linton's performance, the Court disagrees with Defendant that "no competent counsel would have taken the action[s]" Linton took and which are now questioned by Defendant. *See Johnson*, 256 F.3d at 1176-77.

As previously stated, the Court need not address the second, "prejudice," prong of the *Strickland* standard because Defendant has failed to carry his burden of establishing the first, "performance," prong. See *Bottoson*, 234 F.3d at 532; *Reece*, 119 F.3d at 1464 n.4, *supra*. However, because the Court finds that a preponderance of the evidence in this case supports the government's position that Linton's performance was not deficient, the Court acknowledges that there is absolutely no evidence of prejudice to Defendant as a result thereof.

### III. CONCLUSION

Having considered the arguments of Defendant and the United States, as well as the evidence presented in support of both sides to this dispute, the Court finds that

Defendant has failed to establish either prong of the *Strickland* standard for ineffective assistance of counsel by Charles Scott Linton on any basis offered by Defendant as grounds for relief. Therefore, Defendant is not entitled to habeas relief as requested in his § 2255 motion, and the same is due to be denied. An appropriate order will be entered.

      **DONE** this the 27th day of October, 2010.

 

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge